NATHAN DYKE *et al.*, Plaintiffs in Error, *v.* JAMES McVEY, Defendant in Error.

#### ERROR TO RICHLAND.

A party to whom a warrant for land has issued under the "Act granting bounty land to certain officers and soldiers who have been engaged in the military service of the United States," approved the 28th of September, 1850, may bargain or convey the same before the patent has issued.

THIS cause was heard before HARLAN, Judge, at the May special term of the Richland Circuit Court, 1854.

A. KITCHELL, for Plaintiffs in Error.

C. H. CONSTABLE, for Defendant in Error.

TREAT, C. J. The "Act granting bounty land to certain officers and soldiers, who have been engaged in the military service

of the United States," approved the 28th of September, 1850, declares, that a party entitled to the benefit of its provisions "shall receive a certificate, or warrant, from the Department of the Interior, for the quantity of land to which he may be entitled, and which may be located by the warrantee or his heirs at law, at any land office of the United States, in one body, and in conformity to the legal subdivisions of the public lands, upon any of the public lands in such district subject to private entry.". It further declares, "that all sales, mortgages, letters of attorney, or other instruments of writing, going to affect the title or claim to any warrant or certificate issued or to be issued, or any land granted, or to be granted, under the provisions of this act, made or executed prior to the issue, shall be null and void to all intents and purposes whatsoever; nor shall such certificate or warrant, or the land obtained thereby, be in anywise affected by, or charged with, or subject to, the payment of any debt or claim incurred by such officer or soldier, prior to the issuing of the patent."

A warrant for eighty acres of land was issued in favor of Nathan Dyke, under the provisions of this act, and on the 18th day of September, 1851, he located the same on a tract of land situated in the Palestine land district, surrendering the warrant to the land officers, and receiving from them a certificate of entry. On the 20th of December, 1851, he executed a bond to James McVey, conditioned for the conveyance of forty acres of the land, on the payment of $50 within five years, and the bond was executed the same day. He departed this life on the 3rd of January, 1852, leaving Jane Dyke, his widow, and N. V. Dyke, his son, his only heirs at law. The latter became administrator of his estate. The widow and son conveyed to Thomas Nettleton twenty acres of the land embraced in the bond to McVey. A patent for the eighty acres of land was issued in the name of Nathan Dyke, on the 1st of April, 1853. On the 8th of September, 1853, McVey filed a bill in chancery against Jane Dyke, N. V. Dyke and Nettleton, praying for a conveyance of the forty acres of land. He previously tendered $50 to N. V. Dyke, in payment of the land; and he brought the same into court. N. V. Dyke, by his answer, insisted that the sale of the land to McVey was absolutely void, under the provisions of the act of Congress, and Nettleton insisted that he purchased the twenty acres in good faith, and without any notice of the prior sale to McVey. On this state of case the court required the defendants to convey the forty acres of land to the complainant.

It is manifest, from a bare inspection of the act of Congress, that it does not invalidate the contract between Dyke and Mc Vey. The act embraces two kinds of cases. It avoids all con-

tracts respecting a warrant or the land upon which it may be located, made anterior to the issuing of the warrant. The warrant is issued directly to the party entitled to the benefits of the act, without any reference to his prior contracts with other persons. His legal rights are not in the least affected by any previous sale or transfer. The act makes void all such contracts. The contract in question is not obnoxious to this provision. It was made after the issuing and location of the warrant. The land was then as much the property of Dyke and as much the subject matter of disposition by him, as if he had acquired it by ordinary entry. He had surrendered the warrant and accepted the land in satisfaction. The United States had alienated the land and received the warrant in full payment. A patent had only to issue to invest Dyke with the complete legal title. The act provides that the land on which a warrant is located shall not be subject to the payment of debts contracted by the warrantee before the patent issues. This provision is evidently intended for his benefit, and may be waived by him. It forbids a forced sale of the property on account of any liability incurred by him before the emanation of the patent; and in case of his death, prior to the issuing of the patent, it may be that the land would pass to his legal representatives discharged from the payment of his debts. But this provision does not restrain him from disposing of the land; it leaves him at perfect liberty to alien, incumber or divide the same. Dyke having voluntarily sold the land to McVey, the sale is binding on his heirs. It is also binding on Nettleton, for the bond was registered long before he purchased from the heirs. He had implied notice of the sale to McVey, and therefore cannot claim protection as an innocent purchaser. The decree must be affirmed.

*Decree affirmed.*