GEORGE W. ROSE, Appellant, *v.* THOMAS A. BUCKLAND,
Appellee.
DANIEL W. WHITTEMORE, Appellant, *v.* THE SAME,
Appellee; and
AMOS WHITTEMORE, *v.* THE SAME.

#### APPEAL FROM BUREAU.

Congress has power and jurisdiction, over land granted as bounties to soldiers of the war of 1812, for the purposes of protection, disposition and investiture of title, so long as the title remains in the United States.

The limitations and prohibitions of the act of Congress of 1812, as also the act of 1842, in relation to bounty lands, restricting the sale and transfer of such lands, are constitutional, and do not infringe the rights of the States. All assignments or conveyances of such bounty lands, or of warrants therefor, prior to the issuing of the patent, are void.

IT appears by the bill for an injunction filed in the case of Rose, that Whittemore, his grantor, purchased of Daniel Clough, the son of David Clough, who had been a soldier in the war of 1812, all the right which he had to any land that might be granted to said David Clough, for services in said war; and that Mary Clough, a daughter of said David, (Daniel and Mary being the only children and sole heirs of David,) gave him a power of attorney, to procure the warrant for the land, from the United States, to which her father was entitled, to locate the same, sell the land and divide the proceeds with her. At the time of these bargains between Daniel and Mary Clough and Whittemore, the circumstances of the death of David Clough, were unknown, and Whittemore was put to expense and trouble in finding them out, and in procuring the facts requisite to obtain the warrant for the land. Daniel Clough gave a quit-claim deed to Whittemore, for his interest in the land to be obtained, for $75. Whittemore subsequently settled with Mary for her interest, and obtained that also. After these bargains, Whittemore obtained the patent for the land, located it and sold to Rose. Rose resided on the land and has paid taxes for more than seven years. After the patent had been issued, the grantees of Buckland, the appellee, obtained a quit-claim deed from Daniel and Mary Clough, for the land located by the patent, for a consideration of $24, with a full knowledge, as the bill alleges, of all the facts of the agreements and bargains between Daniel and Mary Clough and Whittemore. That the property at the time of the quit-claim to Buckland, was worth $3,600. Buckland brought ejectment against Rose, and Rose filed this bill for an injunction, seeking to restrain Buckland in the prosecution of his ejectment. A demurrer was sustained, and the

bill was dismissed for want of equity, by LELAND, Judge, at January term, 1855, of the Bureau Circuit Court. Complainants appealed. The facts and questions in the three cases were similar, in so far as the opinion of the court affects the same.

GLOVER and COOK, for the Appellants.

M. T. PETERS, for the Appellees.

SKINNER, J. The laws of Congress, of December 24th, 1811, and January 11th, 1812, gave one hundred and sixty acres of land to each of the non-commissioned officers and soldiers, who served in the late war of the United States with Great Britian, upon their discharge and faithful performance of their duties while in service, and upon such terms and conditions as Congress should thereafter by law provide.

The law of Congress of May 6th, 1812, provides for the survey of certain of the public domain; for the locating of military bounties therein; for the issuing of warrants for the period of five years, to the parties entitled to such bounty; for the granting of patents to them; and provides: " that no claim for military land bounties shall be assignable or transferable in any manner whatever, until after patent shall have been granted in manner aforesaid. All sales, mortgages, contracts, or agreements of any nature whatever, made prior thereto, for the purpose, or with the intent of alienating, pledging or mortgaging any such claim, are hereby declared and shall be held null and void."

This law also declares that the land shall not be subject to sale on account of the debts and contracts of the party entitled thereto, existing at the date of the patent. The law of Congress of April 16th, 1816, upon the same subject and carrying out the intention of the former laws, provides: " That no transfer of land granted by virtue of this or any other law, giving bounties of land to non-commissioned officers, musicians, or privates, enlisted during the late war, shall be valid, unless the contract or agreement therefor, or letter of attorney giving power to sell or convey, shall have been executed after the patents shall have been issued and delivered to the persons entitled thereto."

By the law of Congress of July 27th, 1842, the party, entitled to land bounty for services in the war of 1812 with Great Britian (his heirs or legal representatives), is authorized to enter the amount of land he is entitled to under the previous laws, at the public land offices of the United States.

This law provides: that the certificate of location issued under the provisions of this act, shall not be assignable, but the

patent shall in all cases issue in the name of the person origin-
ally entitled to the bounty land, or to his heirs or legal repre-
sentatives." From the passage of the first laws, granting land
bounties up to almost the present time, Congress has enacted
laws reviving and continuing expired authority to prove right to
and obtain military bounties under those early laws, and carry-
ing out their spirit and intent.

These bills show that the ancestor of the patentees of the
land in controversy was entitled to bounty land as a soldier of
the war of 1812, and that it was patented to them for such
bounty; that the entry was made under the act of Congress of
1842; that the patent issued to them in 1845; and that the
complainants claim under the patentees by conveyances executed
*before* the issuing of the warrant upon which the entry was
made, and of course before the entry and before the issuing of
the patent. The main question in these cases is, as to the
validity of these conveyances. If Congress has power under
the constitution of the United States to impose the limitations and
restrictions upon the sale of the *inchoate* interest existing in the
patentees by virtue of the laws prior to the granting of the
warrant, or prior to the entry or to the granting of the patent,
and those limitations and restrictions extend to these convey-
ances, it follows that they are void. Without the laws of Con-
gress of 1812 and 1816 the law of 1842 would be wholly
ineffectual. The bounty is given by these first laws, and the
manner of dispensing it—of selecting the land—only is changed.

Under the first laws the land was drawn by lot; under the
last, the warrantee may select the land by entry and the patent
issues by authority of the laws creating the bounty, and the sub-
sequent laws keeping them alive, and giving them more complete
efficacy.

The limitations and restrictions imposed by the laws creating
the bounty follow it until they are removed by law. There is
no retrospective operation of law in these cases, in the light of
invalidating contracts between individuals. The limitations and
restrictions upon sale of the bounty are contained in the laws
creating it, and without which it would not exist; and the pro-
hibition against assigning the certificate of entry contained in
the law of 1842, is a part of the law giving the right to make
such entry.

The northwest territory embracing this State was ceded by
individual States to the United States before the federal consti-
tution went into operation, the proceeds of which were to
constitute a common fund for the benefit of the whole. The
ordinance of 1787, establishing political government over this

territory, contains this clause : The legislatures of the districts or new States created out of said territory " shall never interfere with the primary disposal of the soil by the United States in Congress assembled, nor with any regulations Congress may find necessary for securing the title in such soil to *bona fide* purchasers." The constitution of the United States, subsequently adopted, provides, " that the Congress shall have power to dispose of, and make needful rules and regulations respecting the territory or other property belonging to the United States." U. S. Constitution, Art. 4, Sec. 3.

This constitution and the acts of Congress passed by authority thereof are, within their sphere, the supreme law of the land.

That the federal government is one of limited and enumerated powers, and that Congress can exercise only such authority as is conferred by the federal constitution, is universally conceded. But in respect to those subjects where the power is expressly conferred by the constitution, it is supreme, and may execute the power by such laws as are necessary and proper " for that purpose.

The " power to dispose of and make needful rules and regulations respecting the territory " or public domain, being expressly delegated by the constitution to the United States, it follows that the laws of Congress, made for the purpose of such disposition and for the complete investiture of the title in the purchaser or donee, are made in pursuance of the powers delegated. 3 Story on Const. Secs. 1319–1322 ; 1 Kent's Com. 242 ; Rawle on Const., 237, 240 ; Sergeant on the Const., Chaps. 31 and 33.

The power and jurisdiction of Congress over the land in question, while it remained the property of the United States, for the purposes of protection, disposition and investiture of title, I cannot doubt. And such has been the practice of the general government, with the acquiescence of the States generally, since the adoption of the federal constitution. 1 Kent's Com. 258 to 260.

Laws granting bounties of land for meritorious public service have been passed by Congress at various times up to 1855, and most of them contain prohibitions against sale of the bounty while the title remained in the United States, or until the right should become tangible, by the issuing of a warrant or location of the land.

Congress has passed preëmption laws, provided for adjudicating upon rights of individuals arising out of them ; and although by the laws of this State these preëmption rights are treated as property, this court has uniformly recognized these adjudications as valid and conclusive upon the parties. *Gray* v. *McLanee*,

14 Ill. 434; *Bennett* v. *Farrar et al.*, 2 Gill. 598; *McConnel* v. *Wilcox*, 1 Scam. 354; *Delauney* v. *Burnett*, 4 Gill. 492; *Turney* v. *Saunders*, 4 Scam. 527; *French* v. *Carr*, 2 Gill. 664.

Congress has enacted penal laws against trespassing upon the government lands, and these laws have been recognized by this court and enforced within the States.    *Carson* v. *Clark*, 1 Scam. 116.

As a simple proprietary of the public lands, the federal government would undoubtedly have the same power to attach conditions and restrictions upon grants to individuals as would appertain to other proprietors.    But in these cases it is not necessary to ascertain the limit of legislation relating to the public lands, prescribed to Congress by the constitution.    The conveyances which I hold invalid under the laws of Congress of 1812 and 1816, were executed before the warrant was obtained upon which the entry was made, and the patent afterwards issued.    At that time nothing existed but an *inchoate* right of the vendors to *have* a warrant authorizing the entry of 160 acres of land; the land was not selected, and the title to it, both legal and equitable, was in the United States.    The laws which gave the bounty, prohibited its sale while in this imperfect, intangible condition, as a " rule and regulation" respecting the public property, and the prohibition operated upon the contract.    To hold these prohibitions unconstitutional, at this period, would unsettle titles to lands in this State to an alarming extent, and lessen the public confidence in the security of estates.

I do not wish to be understood as conceding that Congress has power in any manner to affect or control State laws operating upon the contracts or property of its citizens.    It does not follow that because Congress may not exempt land from the operation of the State laws when it has become private property, that Congress may not exercise jurisdiction over it for the purposes of protection and disposition, while it remains public property of the United States.    Nor do I wish to be understood as intimating an opinion as to the effect of the prohibitions of the laws of Congress of 1812 and 1816, upon conveyances of the land executed after entry under the law of 1842, and before the issuing of the patent.

In the case of *Dyke et al.* v. *McVey*, 16 Ill. 41, similar prohibitions against sale before the issuing of the warrant, under the late law of Congress granting bounties of land, approved September 28th, 1850, came before this court, and, although the question of their validity was not raised, the power of Congress to prohibit such sales is clearly conceded.

Until the United States have substantially parted with the land, and thereby divested the federal government of that juris-

diction over it conferred by the constitution, I cannot question the rightful power of Congress to provide for its protection and disposition in such manner as may be necessary and adapted to those purposes.

I concur with the chief justice upon the other questions presented by the record and discussed in his opinion.

The several decrees of the Circuit Court are affirmed.

*Decrees affirmed.*

---

SCATES, C. J., DISSENTING. The only difference in the questions presented in these three cases is, that the bill in No. 1, *Rose* v. *Buckland,* sets forth facts sufficient to raise questions upon the statute of limitations, and constructive notice of title by recording. The others do neither, as to the first purchaser from the common vendors, the Cloughs, but all, aver possessions and improvements, and constructive notice from these facts.

We have gone into the question of the character of title and possession necessary to a defence under the statute of limitations and its construction, in *Woodward* v. *Blanchard,* at this term, 16 Ills. R. 424, and need not repeat the arguments or authorities here again. This title falls within the reasoning, arguments and conclusion of that case, and is supported by the cases referred to in it. The only difference which we need notice is, that there, the statute was set up as a shield, and here, it is, by the bill, asked to be made a sword, or so in part, for compelling a quit-claim under decree for quieting title. We need only remark upon this ground of equity, that, standing alone, in the bill, it should have been dismissed, because it will constitute a good defence, if proven to the action of ejectment, sought to be enjoined. Though we may consider it in connection with other grounds of equity in the bill, and decree upon the whole, if sustained, as they are admitted by the demurrer ; yet the statute of limitations, alone, would be no ground for retaining the bill for purposes of relief. So, in any point of view, we deem it very unimportant to discuss it.

We have, in like manner, reviewed and discussed the question of implied notice by the recording acts, and need only to refer to the case of *Bourland* v. *The County of Peoria et al.,* 16 Ill. R. 538. The recording in No. 1 was constructive notice, and is sanctioned in *Bourland* v. *The County of Peoria,* and cases there referred to, and others, and all the usual modes of actual and constructive notice sanctioned by courts of equity may still be shown, to charge the adverse title as not innocent. These bills all aver actual possession, and the making of improvements, at the time of the sales and conveyances from David Clough, on

the 3rd July, and Mary Clough, on the 22nd July, 1852, to Paul Morrell. These are sufficient notice to put him upon inquiry. These were continued, and the recording of all the deeds under adverse claim of title added to them, (except that of David Clough to Amos Whittemore, of 25th Nov., 1840, and from him to Wintz,) (see 3 Sugd. Vend. and Purch. 469, and references,) before Bestor filed his deed for record, and before Buckland purchased. We think the facts and circumstances averred sufficient to put him and all prior grantors, under whom he claims, upon inquiry of the tenant or occupant in possession. This view must bring us to the consideration of the two titles, and a determination as to which is best in equity.

The objections to the title are, fraud on the part of Amos Whittemore, for which we see no foundation in the bills, and that Whittemore's contracts and conveyance of the land were void under the acts of Congress. The title emanated in the bounty of the government to the ancestor, Daniel Clough, for military services as a soldier of the revolutionary and late war of 1812. See act of Congress, 24 Dec., 1811; 2 Story L. U. S., p. 1205, Sec. 2; p. 1208, Sec. 12. The act of May 6, 1812, set apart lands to satisfy these bounties, limited applications for warrants to five years, and declared that the bounty land warrants should be issued only in the names of the persons entitled, and that such warrants should not be assignable. 2 Story L. U. S., p. 1243, Sec. 1, 2.

By the 4th section, page 1244, it is provided, "that no claim for the military land bounties aforesaid shall be assignable or transferable in any manner whatever, until after a patent shall have been granted in the manner aforesaid. All sales, mortgages, contracts or agreements, of any nature whatever, made prior thereto, for the purpose, or with intent of alienating, pledging or mortgaging any such claim, are hereby declared, and shall be held, null and void; nor shall any tract of land, granted as aforesaid, be liable to be taken in execution or sold on account of any such sale, mortgage, contract or agreement, or on account of any debt contracted prior to the date of the patent, either by the person originally entitled to the land, or by his heirs or legal representatives, or by virtue of any process or suit at law, or judgment of court, against a person entitled to receive his patent as aforesaid."

The act of 1816 renews the bounty in section three, and in section five provides, "that no transfer of land granted in virtue of this or any other law, giving bounties of land," "shall be valid, unless the contract or agreement therefor, or letter of attorney, giving power to sell or convey, shall have been executed, after the patents shall be issued and delivered to the persons entitled

thereto." 3 Story Laws U. S., p. 1563. The time for issuing and locating warrants extended to 1819. 3 Story L. U. S., p. 1661. These powers were extended, and revived and extended, from time to time. See 3 Story L. U. S., p. 1664, Sec. 1; p. 1721, Secs. 1, 2; p. 1969, Sec. 1; 4 Story L. U. S., p. 2410, Sec. 1, Caps. 279, 280; 5 Story L. U. S., p. 2873, Secs. 1, 2. This last act was dated in 1842, and again extended the time for issuing, and allowed a location of them upon any land subject to entry, and provided " that the certificate of location obtained under the provisions of this act shall not be assignable, but the patent shall in all cases issue in the name of the person originally entitled to the bounty land, or to his heirs or legal representatives." How far do these provisions affect the complainants' titles in equity? The Cloughs had only an equitable claim upon the government for land, and which was, by the receipt and deed, sufficiently described and assigned, for a valuable consideration; and so, with the power of attorney, to operate on such an interest. This was settled, in principle, in *Fisher* v. *Fields,* 10 John. R. 562, in a strongly analagous case.

The strongest ground assumed in the argument is, that by these several acts, the contract, sale and conveyance being made before the patent issued, were null and void. Such a position demands very grave and serious consideration, before I can sanction it. State governments are supposed to represent and exercise all the general powers of government, not delegated to the United States, nor prohibited to them by the constitutions of the United States, or the particular State. The government of the United States is one of special delegated authority, and is confined to those powers expressly so delegated, and such implied powers as are necessary to the exercise of those delegated, (Article 10 of amendments;) the remainder not prohibited, are reserved expressly to the States or the people. And the enumeration in the constitution is not to be construed as denying or disparaging the remaining powers of government. Article 9. In suits at common law, for values above twenty dollars, the trial by jury, and the rules of the common law are preserved in the courts of the United States. Article 7. The articles, from one to six, inclusive of amendments, contain a bill of declarative rights, restrictive of the powers granted to the United States.

Article four of constitution, sections one and two, declare in like manner general rights; and clauses two and three of section two, prohibit certain action of the States, to defeat the rights therein declared. So section three, clause one, declares further rights and restrictions upon the power; and section four is a declaration of rights, and a delegation of power to secure them.

Rose *v.* Buckland, and Whittemore *v.* Buckland.

But the great mass of powers delegated to the general government are found in the 8th section of the 1st article; and the general explanatory restriction upon the powers granted is found in the 9th section. But no where in the whole instrument have I found a section or clause authorizing local territorial legislation upon contracts generally, or upon the common domestic and business relations of citizens of the States, or United States, within the States, unless it be over the territory of the District of Columbia, and such places as are purchased with the consent of the State or States, in which they are situated, for forts, magazines, arsenals, dock yards and other needful buildings, as provided in clause seventeen of section eight.

The 18th clause gives the power to make all necessary and proper laws to carry into execution the powers delegated; and amongst them we find (article 4, section 3, clause 2,) power to dispose of, and make all needful rules and regulations respecting the territory and other property belonging to the United States, but not to be construed to the prejudice of the claims of the United States or any particular State; and, also, that the constitution and treaties made under its authority, and laws made in pursuance of it, are the supreme law of the land. We are bound by them and will obey them.

But I claim the right, in adjudicating upon the rights of parties, before me, and in cases within the jurisdiction of the court, to examine whether the law of Congress, under which either party may claim or defend, is in pursuance of, conformable to, and within, the express or implied powers granted. After thus presenting a general outline of the delegated powers, and the restrictions and explanations of them, with those declared to be reserved and secured to the States and people, I come to the examination of the acts of Congress, upon the rights of the parties in the case before us. It is a new phase, and, I am persuaded, a rare instance of the claim and exercise of such power, as being within those expressed or implied. A part of these acts I am unable to distinguish away, but feel compelled to understand the intention of the makers as asserting the power and right to legislate upon that class of contracts, &c., debts, judgments and executions, which respect to bounty land claims, and bounty lands after patent issued; and under the best and soundest view I am able to take of the constitution, its objects and intent, I am constrained to say, that the subject matter of these provisions is not included in, or contemplated, or intended to be within, the expressed or implied powers. Congress, I conceive, has no power to legislate upon the subject of contracts, rights, property, real or personal, laws of descent or distribution, the domestic relations, or intercourse of the citizens in their

social or business relations; nor to repeal, alter, or change the principles of the common law, in its most comprehensive sense, as including the commercial, ecclesiastical and civil law, as it respects their relation to these transactions, relations and property, or their appropriate remedies. *Commonwealth* v. *Murray*, 4 Binn. R. 495, per Breckenridge, J.

Congress has the power to sell or dispose of the public lands, and may pass such laws and make such rules and regulations as are found necessary and are deemed judicious to accomplish this object, and to secure the title to the purchaser or donee. But the contract, sale, or conveyance of the land, when made, is interpreted in its terms, and its obligations ascertained by the rules and principles of the general or common law of the place of the contract, or the *situs* of the property, as would be done on a similar contract between private persons. 3 Story on Const. 200, Sec. 1324; *United States* v. *Barker*, 12 Wheat. R. 559; Sergeant's Const. Law 290.

Congress may provide, as in these acts, that they will recognize no purchaser or assignee of an equitable claim for bounty land, nor the rights of any save the donee or his heirs, &c., but will issue the patent to him or them alone. But when they undertake to go a step beyond this, and not only refuse to recognize such purchase or assignment as giving any right to demand the land or patent, but also to provide and declare such contract, purchase, assignment, and all agreements for such equity or land void as between the parties to it, although such agreement is lawful, valid, binding, and enforcible by the laws of the State where it is made or the land lies, as between the parties to it, I am constrained to regard it as an unauthorized and unconstitutional invasion of State sovereignty, and such acts are null and void. Under the laws of Illinois this contract for an equitable claim on the United States for a quarter section of bounty land was lawful. When made between parties capable of contracting, for a valuable consideration, and without fraud, it is capable of being enforced by specific conveyance, or damages may be recovered for its breach. I am not advised that it was void by the laws of N. Hampshire, where made, and it may be enforced as made for land, or an equitable interest in the land, within the jurisdiction of this State. A power in a landholder—and it is in such light as a trustee, that I regard the United States in relation to the power to sell and dispose of this land under the constitution—to exempt the land on sale or donation from the general or special authority and jurisdiction of the laws of the State is not recognized, conceded, or compatible with political sovereignty. Nor can it find any sanction or place in the constitution of the United

States. Neither is a power to make a particular disposition of it by entailment, or will, any exception to the general rule. It is not an incident to proprietorship, but must depend upon the local institutions and laws. As well might Congress, by virtue of its ownership and power to sell and dispose of it, under the constitution, change, alter, or amend the law of descents, testaments, and intestacies and distributions, and the settlement of estates, so far as subjecting lands to the payment of debts is concerned, and the law of judgment and other liens upon and their sale for debts of any description, as to alter, amend or change the laws of Illinois, under which this contract may be enforced, or under which plaintiff might have satisfaction of damages for its breach, or other creditor, prior to patent, have the same for his debt by a sale of this land on mortgage or execution. Nearly the whole domain of Illinois has been originally derived from the same original ownership; some States, and many territories yet to become States, entirely so. If Congress has this power over the contracts, &c., and all rights relating to the land by virtue of that ownership and the power of its disposition under the constitution, I know of no legitimate argument that would limit or prevent their moulding and controlling the institutions and laws of the States for ages, and that by laws regulating the powers and rights of all owners of it, and regulating their duties and liabilities.

When we have acquiesced in the power in Congress to secure the land and the title to the purchaser, we have reached the boundary of political and proprietary jurisdiction and right. The doctrine laid down in *Wilcox* v. *Jackson*, 13 Pet. R. 498, in relation to the evidence of title and the power of the State to establish the character and kind of evidence, reached that boundary. But the court distinctly recognize the political right and power of the State to legislate as she deems proper in relation to the property of the citizens, and this may well include their contracts. The first acts of the general government, in relation to these territories and public lands, commenced in usurpation of powers acquiesced in under a law of necessity, (see Federalist, Nos. 38, 42, 43 ; 3 Story Com. Const. 186–7,) but the power of sale has been confided since by the constitution, that I will support ; but I should feel derelict in my duty, if I sanction acts that would sweep away the jurisdiction of the State to regulate its landed interest and all the contracts and remedies of its citizens respecting it, and quietly suffer a centralization of this power over both, in the United States. I do not pretend that these acts alone would effect so disastrous a state of things, but if the power exercised in this instance exists, we hold our jurisdiction as a State by the uncertain

tenure of national discretion. Congress passed laws inflicting penalties for trespasses committed upon the public lands, thus exercising acts of political sovereignty within the territorial limits of this State, and regulating acts and remedies in relation to the property within its jurisdiction. I need not characterize these acts, nor examine their claims to constitutional sanction after the formation of a State government, but I may be allowed to believe that such acts and pretensions by any other land-holder, individual or corporate, would have excited attention and rebuke. But even admitting this as a necessary rule or regulation, for its disposition, without appealing to the laws of the State for its protection equally and alike with all other pro-prietors, still they may not therefore assume to regulate and control it after they have sold it, nor intermeddle with lawful contracts between citizens of the State concerning it, nor make void all the judgments that are rendered for debts due prior to their patent, and entitled by the laws of the State to satisfaction by a sale of it, after the title is made. I do not suppose that Congress, in these instances, designed to interfere with State jurisdiction. But through a high and tender regard to an im-provident class of individuals, objects of their bounty, these provisions were inserted for their protection and security, as well as for protection of the United States, from fraud and imposition. But no motive, however exalted or commendable, will satisfy or palliate the invasion of the State's sovereignty and right to regulate the protection and rights of her citizens, either in their persons or property. As well might Congress declare that lands sold or given, should not descend to an alien heir in this State, because it might endanger the peace, safety and stability of our institutions, while the laws of the State allow such alien to take by descent. See Justice Johnson Arguendo, *Ogden* v. *Saunders*, 6 Cond. R. 531 ; *Lessee of Jackson* v. *Burns*, 3 Binn. R. 84.

This contract was made on the 25th Nov., 1840. The last act of Congress, which revived the former acts, and under which this land was obtained, passed in 1842. If the act was allowed to be valid as to the character of its provisions, it might still be held invalid as to this contract, because it impairs the obliga-tion by declaring the whole void, and this retrospectively.

I know, literally, by the terms of the tenth section of the first article, that the prohibition to pass laws impairing the obliga-tion of contracts is confined to the States. See 3 Story Com. Const., Sec. 1339, p. 212. *Satterlee* v. *Matthewson*, 2 Pet. R. 416, per Johnson, J.

The reasoning of Judge Story in 3 Story Com. on Const. 268, Sec. 1393, is altogether applicable to the United States as well

as to the several States, the principles of our institutions and natural justice should shield parties from a wanton destruction of their contracts and rights where no principles of public policy are contravened by them.

It is with diffidence that I approach a subject so grave, and the first of its character I have met with. But I feel sure that precedent is not wanting, to show that State courts will declare the acts of Congress invalid, when properly presented, and essential to the rights of parties before them. See *U. States* v. *Lathrop,* 17 John. R. 10 ; Sergeant Const. Law 279 to 290 ; though most of the cases I have examined were cases of habeas corpus.